```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF OKLAHOMA
```

LISA M. SWEENEY,                )
                                )
            Plaintiff,           )
                                )
v.                               )    Case No. CIV-15-077-JHP-KEW
                                )
CAROLYN W. COLVIN, Acting        )
Commissioner of Social           )
Security Administration,         )
                                )
            Defendant.           )

## REPORT AND RECOMMENDATION

Plaintiff Lisa M. Sweeney (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on February 26, 1973 and was 41 years old at the time of the ALJ's decision. Claimant completed her high school education and obtained certified nurse assistant certification. Claimant has worked in the past as a door assembler and production assembler. Claimant alleges an inability to work beginning October 20, 2011 due to limitations resulting from diabetes, hepatitis C, obesity, gastroesophageal reflux disease (GERD), depression,

3

anxiety, pain, and chronic fatigue.

## Procedural History

On February 22, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and on March 5, 2013, she filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On July 29, 2014, an administrativ hearing was conducted by Administrative Law Judge ("ALJ") Bernard Porter by video with Claimant appearing in Fort Smith, Arkansas and the ALJ presiding in McAlester, Oklahoma. On September 22, 2014, the ALJ issued an unfavorable decision. The Appeals Council denied review on December 29, 2014. The decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform her past relevant work. He also concluded Claimant could perform less than a full range of light work at step five.

## Error Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to identify all of Claimant's severe impairments at step two; (2) reaching an improper RFC determination; and (3) making an improper finding at step four that Claimant could perform her past relevant work.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of diabetes, hepatitis C, obesity, asthma, migraine headaches, major depression, anxiety disorder with panic disorder, somatoform disorder, and personality disorder. (Tr. 14). The ALJ concluded that Claimant retained the RFC to perform less than a full range of light work. In so doing, the ALJ found Claimant could lift/carry twenty pounds occasionally and ten pounds frequently; could stand/walk up to six hours in an eight hour workday; and could sit up to six hours in an eight hour workday. Claimant was restricted to only occasional use of hand and food controls. She could occasionally climb ramps and stairs, but can never climb ladders or scaffolds. Claimant could frequently balance, stoop, and crouch, occasionally kneel, but never crawl. She could frequently handle, finger, and feel but could not work around unprotected heights or moving mechanical parts. Claimant should avoid concentrated exposure to humidity, wetness, dust,

fumes, and gases and should avoid any environments where there are temperature extremes. Claimant requires a sit/stand option. She was limited by the ALJ to simple tasks and simple work-related decisions. Claimant should occasionally interact with supervisors, co-workers, and the public. Her time off-task would be accommodated by normal breaks. (Tr. 17).

After consultation with a vocational expert, the ALJ found Claimant retained the RFC to perform her past relevant work as a production assembler. (Tr. 31). He also determined Claimant could perform the representative jobs of marker, sorter, and small product assembler. (Tr. 32). As a result, the ALJ found Claimant was not disabled from October 13, 2011 through the date of the decision. Id.

Claimant first contends the ALJ should have included musculoskeletal pain and neuropathy as severe impairments at step two. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628-629 (10th Cir.

2008).  The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291–292, (10th Cir. 2008).

The evidence indicates the ALJ considered Claimant's assertions of back pain and neuropathy in arriving at the RFC.  (Tr. 18-20). The omission of these conditions at step two is not reversible error.

**RFC Determination**

Claimant challenges the ALJ's RFC assessment.  Under this general umbrella, Claimant asserts numerous sub-issues.  She contends the ALJ failed to adequately develop the record by failing to procure further consultative examinations.  . Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed

during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is not required to act as a claimant's advocate. Henrie, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;

(4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or

(5) There is an indication of a change in your condition that is likely to affect your ability to work.

20 C.F.R. § 416.909a(2)(b).

This Court does not perceive that any of the factors which might compel the ordering of a consultative examination to be present in this case. No conflict in the medical evidence exists, Claimant's condition does not require the evaluation by highly specialized experts, no change of condition has been demonstrated, and the need for additional evidence is not indicated. Claimant testified at the administrative hearing with counsel who could have elicited any supportive testimony. Claimant is essentially suggesting that the ALJ should have built her case for her. Nothing in the evidence remotely suggests that further diagnostic testing would have resulted in a different conclusion as to Claimant's ability to engage in basic work activities than the ALJ determined from the evidence that exists in the record. The ALJ did not err in failing to develop the record.

Claimant asserts the limitations the ALJ found as a part of the RFC assessment have no basis in the medical evidence. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis

despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

Claimant seeks to have each functional limitation stated by the ALJ to have a corresponding medical opinion supporting - a requirement finding no support in the law. Claimant first contends that the ALJ should not have rejected or given "little weight" to the opinion offered by the examining consultative physician, Dr. Robert Spray. Dr. Spray completed a mental examination and source

statement on August 8 and August 22, 2011, respectively. He diagnosed Claimant with major depression, somatoform disorder, and personality disorder. (Tr. 994). He found Claimant had a severe impairment in dealing with work stress and functioning independently, maintaining attention for extended periods of time, maintaining concentration for extended periods of time, being punctual within customary tolerances, completing a normal workday and workweek, performing at a consistent pace, performing without an unreasonable number or length of rest periods, avoiding undue constriction of interests, and behaving in an emotionally stable manner. Dr. Spray determined Claimant was markedly limited in an additional eleven other functional areas. (Tr. 995-97).

The ALJ gave Dr. Spray's opinion "little weight" because his limitations were not supported by his own examination findings, were inconsistent with the treating notes, and were inconsistent with the examination conducted by state agency physician, Dr. Diane Brandmiller. Also, the ALJ found that Claimant reported symptoms of panic attacks which she did not report to other examiners. (Tr. 26.

Dr. Brandmiller diagnosed Claimant with major depressive disorder, single episode, moderate. She found only a slight impairment in abstract thinking. (Tr. 725-29). The ALJ gave Dr.

11

Brandmiller's opinion "great weight." (Tr. 26).

Other medical opinions included Dr. Mark R. Rogow, a treating physician, who opined that Claimant was totally and permanently disabled and could not work at all. The ALJ rejected this opinion as invading the purview of Defendant. (Tr. 25).

Dr. Terry Hoyt also offered an opinion on Claimant's physical limitations. He completed a medical source statement dated August 22, 2011. Dr. Hoyt found Claimant limited to 15-20 minutes in sitting, standing, and walking at one time and 1-2 hours during and entire eight hour workday. He estimated Claimant would require rest breaks at hourly intervals or less and would have to alternate sitting and standing at 15 minute or less intervals. She could frequently lift/carry 0-5 pounds but occasionally lift/carry 6-10 pounds. Claimant could rarely grasp or finger/fine manipulation and rarely bend, squat or crouch. Claimant should completely avoid unprotected heights, dangerous moving machinery, and handling vibrating tools. Dr. Hoyt stated he reviewed Claimant's "old records" and that Claimant was in an obvious state of physical decline. He wrote that Claimant should undergo further evaluation. (Tr. 987-89).

The ALJ also rejected the opinion of several state agency psychologists which found no severe mental impairment given the

other evidence of record and the *de minimis* showing required. (Tr. 27-28).

Truly, in this case, the ALJ was faced with radically varying evaluations of Claimant. The ALJ is required to consider all medical opinions, whether they come from a treating physician or non-treating source. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003); 20 C.F.R. § 416.927(c). He must provide specific, legitimate reasons for rejecting any such opinions. The ALJ must also give consideration to several factors in weighing any medical opinion. Id.; 20 C.F.R. § 416.927(d)(1)-(6). Moreover, an ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). The ALJ methodically proceeded through each opinion, weighing the merits of each and providing specific and legitimate reasons for rejecting or adopting each. The resulting RFC married the most consistent medical opinion evidence with the medical testing which Claimant had undergone. This Court cannot find that the ALJ erred in either his consideration of the opinion evidence or in reaching the RFC.

Claimant also contends the ALJ's credibility analysis is flawed. The ALJ acknowledged the considerable extent of Claimant's

reported daily activities.  (Tr. 30).  He also noted several discrepancies in the record between the medical facts and Claimant's assertions of pain.  (Tr. 29-30).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. In this case, the ALJ properly linked his findings on credibility to the medical record. No error is attributed to his analysis.

**Step Four Analysis**

Claimant contends the ALJ's step four analysis is legally flawed. In analyzing Claimant's ability to engage in her past work, the ALJ must assess three phases. In the first phase, the ALJ must first determine the claimant's RFC. <u>Winfrey v. Chater</u>, 92 F.3d 1017, 1023 (10th Cir. 1996). This Court has determined that the ALJ's RFC assessment was not erroneous.

In the second phase, the ALJ must determine the demands of the claimant's past relevant work. <u>Id</u>. In making this determination, the ALJ may rely upon the testimony of the vocational expert. <u>Doyal v. Barnhart</u>, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ in this case posed a hypothetical which the vocational expert identified as being met by the demands of Claimant's past relevant work as a production assembler. (Tr. 80-81).

The third and final phase requires an analysis as to whether the claimant has the ability to meet the job demands found in phase two despite the limitations found in phase one. <u>Winfrey</u>, 92 F.3d at 1023. The ALJ asked the vocational expert whether someone at

Claimant's determined RFC could perform the jobs which constituted Claimant's past relevant work.  The vocational expert stated Claimant could perform the past relevant work of production assembler.  (Tr. 80-81).  Consequently, the ALJ fulfilled his obligation in the third phase.  This Court finds no error in the ALJ's step four analysis.

## Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied.  Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 14th day of March, 2016.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE